May it please the court, in the name of the law, for the applicant, Darren Benzer. The issue in this case is whether this is a bidirectional pad that provides both input and output. The claim limitation in question is a bidirectional pad for providing both input and output. What you're looking at is the prior art reference, which the patent office alleges that the claim limitation reads on. But Mr. DeLaw, the very existence of the ESD detection circuits means that there is some potential current, the static electrostatic current, flowing from the output pad back towards the pre-driver circuits, right? Yes, Your Honor. And these ESD detection circuits are going to monitor that. And doesn't that suggest that indeed there is some current potentially flowing both ways? Yes, Your Honor, it suggests that there's current flowing both ways. In fact, if there's current flowing both ways, then even though it's labeled an output pad, it does have bidirectional properties, doesn't it? It could be said to have bidirectional properties. We would take exception to whether that still constitutes an input. The first issue is that even in a situation where you have a driver circuit which would drive an output that's received at the pad, if the signal has a negative voltage or a negative polarity, the current would flow in the opposite direction. But yet in this parlance, it would still be considered an output signal. Well, I understand in the Kerr reference here, the current is generally flowing to the right, and it becomes an output pad because the current is generally leaving it. But the whole point of Kerr is to protect against the backflow, if you will, of electrostatic. Yes, that's correct. And so you do have current flowing both ways? Yes, you do have current flowing both ways, but our issue... Why doesn't that then read on the structure that is claimed by Benzer? It becomes almost exactly... the structures are remarkably similar. If you hold them up beside each other, they both... The key issue is the word input. The current may flow in the opposite direction, but it's still not considered an input. It's a misnomer to consider that input or output is determined by the direction of the current flow. But did you explore whether it was feasible to refine the claims or add additional limitations, is there just a broad statement input-output, which is what was obviously causing the trouble? Right. Were there narrower claims that were allowed? No, there were not narrower claims that were allowed. However, we have filed a continuation application to make this perfectly clear. However, at the same time, we still do believe... We still feel strongly in our position that we're presenting here today, but yes, we have also explored the possibility of further amendments. I might add that the claims that are currently... that were currently amended had actually gone through a series of amendments even prior. The claimed invention is essentially a structure, isn't it? If it's a structure... Certainly, this... You're getting the structure is yours for all purposes, however it works. Isn't the same true of curb? It's a structure, and to the extent that it is so vastly similar to the structure you're claiming, why isn't that sufficient alone to call into question capability? Your Honor, this issue was brought up on appeal, on the appellate brief, once it was brought to this court. When that happened, it foreclosed our opportunity to present any evidence of any structural dissimilarities with the output pad versus a bi-directional input-output pad. Now... It wasn't out of your control? You're the one who brought the appeal? Yes, I brought the appeal, but on the reply brief... I'm sorry, we filed the appeal brief. The PTO filed their brief. It was at that point that the argument was made that what this is is a new structure, but with the same... I mean, I'm sorry, a known structure with a new use. At that point, we surely couldn't have submitted something like an affidavit to attach to our rebuttal brief. I mean, that would... Well, it's rather dilemma, because there's a possibility that the affair with the office... What's that going to do to your continuation, or whatever you have going? Well, it would certainly arise as an issue, and certainly one thing that this court would do if this issue was of concern would be to remand this case again and allow... We wouldn't re-examine that way. We would take the case the way it's brought to us. Sure. One thing is that if this case was... If this argument had been brought up in the patent office, we would have had opportunities to present affidavits and evidence to... Perhaps. Did you... I don't remember. In your reply brief, did you object to that new argument? Pardon? In our reply brief, in our rebuttal brief, we did point out that this was the first time that this argument had been brought up. Mr. DeLapp, it seems like the thrust of your argument is that in the Kerr reference, any electrostatic current flowing into the output pad is not really an input. Right. But is that relevant at all to the structure of these two electrical circuits? Right. Is it relevant at all that the current may not actually be driving any internal circuits at all? That the electrostatic current coming back into the output pad in Kerr may not actually be serving any purpose for the rest of the circuit. Why is that relevant at all? Our position is that one skill in the art would not interpret that to be an input. But why is that relevant? Even if we accept your argument, okay, that is, it's current going in two directions through this pad, but is it relevant at all the uses of those currents and whether or not those currents are characterized as inputs or not? Well, if... If the structure is the same and the circuits are working the same and they're accomplishing vastly the same purposes of protecting against electrical surges or whatever, is it relevant that you characterize one as having inputs and the other as not? Okay. Let me try to answer that with several observations. First of all, again, our position has been that as part of the claim language, an input would not be read on to cover an electrostatic discharge. Now, the issue about the structural limitations is that at the juncture that this has been brought up, we have not had any ability to present evidence. I mean, if this had been brought up at the BPAI level, I would have had the opportunity to produce some affidavits and to show certain different similarities between pads that operate in this manner at which, no, I would have had the opportunity to explore that argument. Of course, if I tried to attach affidavits on my rebuttal brief or bringing them up for the first time... They would object. But I'm going to ask Mr. Johnston as well what the practice is because it's not fresh in my mind. If the board feels that the examiner can be affirmed on a ground other than what was cited during the examination, I think that there are procedures. So we follow on, I think, to answer that question. Maybe this is a good time because your battle time is starting, Mr. Delano. Yes, and I have a, not with me right now, but I do have a case that specifically addressed that. The court ruled that this was not a ground of the original rejection and that the PTO, if they choose to do so, may indeed bring up that rejection. Pardon? After the court's decision, but that's not the situation here, apparently it was included in the briefs. Beg your pardon? I think the case that you're citing acknowledges that when the case goes back to the office, after the court has decided it, they are precluded from putting it back in examination or raising additional grounds, but that's not, as I understand it, what you're complaining about at the moment. Perhaps it would be best if I was able to recall the case. Save the rest of your time for rebuttal. I would say it was nice to say. Thank you, Mr. Delano. Mr. Johnson? May it please the court. I believe that the court is accurate that the pad in Kerr does allow current to flow in both directions. Current can flow out of the output pad 500, and as Kerr explains, it can flow. It's called an output pad. That's probably their strongest argument, isn't it? An output pad is hardly a current. It's something that accepts influence. That's true, Your Honor. Kerr does call 500 an output pad. However, a reference is good for all that it teaches, and it explicitly explains that an ESD source is connected to the output pad, and that source sends current back into the whole system. And so, as opposing counsel even acknowledged, current does flow in both directions. So that would satisfy the claim of a bidirectional pad providing both input and output. So the question then remains... How does Kerr, if I'm understanding, and Bruce didn't help me a lot, understand the technology, but I think I understand that Kerr is protecting against static electricity that might flow back into this system, although it's not... The lines are going out. It's supposed to be an output pad, as it suggests. And ESD detection circuits are just there to protect against any static electricity if I pick up some from my carpets or something and touch this circuit. Is that what's going on here? That's correct, Your Honor. When there is an ESD source that's connected to the output pad, then the protection circuit acts to dissipate that particular charge so it doesn't harm any of the internal circuit. But how is that an input? If you read the input language in the claim very literally, this isn't really an input. It's kind of protecting against it becoming an input, isn't it? Well, Your Honor, the real starting point is the actual claim language itself. And the claim here calls for just an input. And it's very broadly claimed. It does not state that the input has to provide some sort of source that goes to the internal circuitry. All it requires is for the source to input into the system. And that's what the ESD source does. It goes into the circuitry. And the protection circuit, the ESD detection circuit, and the voltage clamp that you see there, they are both operating based on the ESD source. And one of ordinary skill in the arts, seeing that reading curve, would understand that once that source goes into the output pad, that the protection circuit would operate based upon that particular charge. So it would function as an input. You're saying the claim was not sufficiently precise? Was there rejection on that ground? Rejection was on 103, wasn't it? No, it was 102, Your Honor. But not on the fact that this may, in fact, be different, which you haven't adequately defined. There was no rejection of 112, was there? How was an applicant to cope with the system on this kind of stonewall effect? Well, at the point at which the office issued its 102 rejection, it was then incumbent upon the applicant to point out the difference between the structure of the reference and the claim structure. And the applicant didn't do that. If you hold up the structure of the claim pad, and you hold up the structure of KERS pad, you see that they function in the exact same way. And once the rejection was issued, then the applicant could have submitted an affidavit or some sort of evidence to show that one of ordinary school of the art reading the claim would see it differently. But he didn't do that. And he had a number of opportunities to do that throughout the prosecution history of this case. And that was just one claim. Since you said minus input output, the other one goes one way, and now it's fixed, that seems to be an accurate statement. No, but when you look at the actual claim itself, or input, it's very broad. If the claim had written, if he had written the claim to state that the input is to, is supposed to have a signal that goes to the logic circuit, then yes, what he would be arguing would be stronger. But it doesn't state that. It doesn't state that at all. It's very broad, and it merely calls for an input to go into the system. You're saying the claim is too broad. That's right. I thought that there may not be a technological distinction. But you didn't reject it, apparently. The rejection was that the Kerr reference teaches an input as claimed. And because it's claimed broadly, Kerr satisfies the input language because the current flows in both directions. And as broadly claimed, that's what's all, that was all that the examiner was required to do, to present a reference which shows current flowing in both directions. And admittedly, that is what the Kerr reference does. And the structures are the same. And the applicant hasn't shown any evidence, hasn't presented an argument, which shows that the structures are distinct, that they're different in any way. There was some discussion a few moments ago about there being a new argument. When the case was before the PTM, the only argument that the applicant made was that the reference, the Kerr reference, does not teach a bidirectional pad with both an input and an output. When the case was before the board, that's all that the applicant argued. For the first time in their blue brief, they argued that input means that the signal that goes into the pad has to operate a logical circuit, which could be somewhere down the line in a system itself. So in response to that argument, we pointed out that the applicant did not present any difference in the structure of their claimed pad and the structure of Kerr's pad. And we further pointed out that what they're really arguing is that they want to patent on a new use for an old one. And this court has stated repeatedly that an applicant cannot get a patent on a new use for an old product. That's correct, Your Honor. However, we're not dealing with a method claim. We're dealing with a product claim. And in those situations, this court has repeatedly stated that you cannot get a new use on an old product. That's correct, Your Honor. This was not a new ground of rejection at all. The examiner stated that the structures of Kerr's saying was really clear to the applicant what they were fighting here. I think that's what's concerning both Judge Newman and I. Did they really know they were up against an anticipation argument? Or did they think they were facing a broad claim argument? Frankly, the briefs were a little confusing to me, too. It took me quite a while to figure out whether this was obviousness or anticipation or what was going on. Was that clear? The examiner issued a 102, anticipation of rejection. The board affirmed the 102. Yes, based upon the language that was used and the type of format of rejection itself. I mean, just leave it on in terms of a number of instructions. Well, I believe that I would have to review the actual rejection. The problem is that the anticipation argument kind of depends upon your reading of the breadth of the claim. So it's really a little difficult for one to decide whether we're fighting about claim breadth or anticipation. There's kind of a mixture of arguments here, isn't there? Your Honor, the board, the examiner issued the 102. And I understand that you're not interested in numbers. However, to one of our respondents, they would understand a 102 rejection to be an anticipation rejection. The board clearly affirmed on those grounds. The anticipation rejection is for the second invention. There certainly is a difference. It may not be large. And we can argue about what it means. But there certainly is a difference between this and what Kerr describes. And so how can it be anticipated? You can say your claim is so broad that it reads like a prior art. That's not anticipation. Anticipation is the identical invention. You haven't done anything new. And this is really what's troubling here. And troubling that that's why I ask whether, in fact, there had been an interaction with the examiner to guide the applicant as to how to avoid the breadth that the examiner was objecting to. When the examiner issued the rejection, the examiner pointed out that Kerr teaches an input. The applicant understood that rejection. The applicant simply said, no, it doesn't. The applicant did not say, no, it doesn't. What you need to understand is that input based upon our claim means that the signal has to enter into a pad and operate a logic circuit. The applicant never said that. It doesn't have to. The examiner is an expert. It's not dealing with a bunch of judges who don't know this technology. You have to understand that such and such is the technology. On its face, I would think it's not that complicated. That's true, Your Honor. However, once the examiner satisfies his prima facie burden, then the burden shifts to the applicant to point out how the examiner was wrong. And the applicant, all he said was that Kerr does not teach an input. He did not try to distinguish the structure of the claim to the structure in Kerr. And he did not further state that the input actually has to operate logic circuits. He left the understanding for the PTO to be very broad. And it is the PTO's burden to review claim language broadly. And that's just what the PTO did. And at no point did the applicant point out any difference between the structure or point out that the PTO was misreading the claim language itself. And what of ordinary school in New York reading the input as claimed? Would understand that the current is going into the pad as Kerr does. That means that it would satisfy an input. And that input that is the EDS source is being operated on by the ESD detection circuit. Is there another question? I'll give you more time. May I please? A few observations. There's one thing I'd like to point out which I think is resulting in a little bit of confusion here. It seems as though the patent office has taken it as a given that an input is any circumstance when current flows inward to the device. They're saying that your claim doesn't draw the distinction. Therefore, it reads on any circumstance. And I take that as an invitation to be more specific. Yes, Your Honor, but that's still the underlying assumption is that the meaning of the word input in fact means that the current flows into the device. That's true. That's what we heard from Mr. Johnson. Your Honor, there's no evidence to support that. And our position is that that assumption, which underlies the argument, is incorrect. But they're going to give your claim language the broadest reasonable reading. Right. It is reasonable that if there's current coming in, you could characterize it as an input. If that's the case, then you're going to have to respond and clarify that it's not the kind of input you had in mind. Your Honor, we take exception that it's reasonable to make that assumption that just because input flows inward, that it is an input. In the parlance of one's skill in the art, that's not the case. It's not driving the internal circuits. We understand that. And also, if this device, if there is such a thing known as an output that's a negative voltage, now if you have a negative voltage as an output, the current will flow in. Yet, it's always understood to be an output. But your problem is that the structures of these two circuits are so strikingly similar. So you're going to have to make a distinction, and it's very clear. Yes. And perhaps claim it, as my colleague suggested, as a new use, as a method, rather than as a structure. Yes, and as a matter of fact, we do have one method claim that is under review. Method claim 28. I also did promise to recite a case about remanding from the Court of Appeals for the Federal Circuit. We know our cases. You don't need to remind us. Okay. Anything else that you want to tell us in the remaining 28 seconds? Yes, I would just like to call to your attention in the appendix A4 and A5, where the current reference actually discloses what they deem to be an input pad. And it's not part of figure 27. What I would just say is that if output pads or input pads, this is indeed the most arbitrary labeling of these pads. We present this as evidence that one skilled in the art would not consider that output pad to be a bidirectional pad,  Thank you, Mr. Powell.